Coucock, J.
delivered the opinion of the Court.
The questions submitted to us are, whether, if the children were not equalized by the distribution of the remainder mentioned in the sixth and last clause of the will, the equality intended by the testator shall be now produced in the division of the remainder of the personal property, which has fallen in by the death of the widow ; and whether in such division, or in any other, the children of David Ruff shall be permitted to participate.
These questions depend upon a single inquiry; to wit, whether the bequest to the children in the second clause, is controlled by the directions contained in the last clause of- the will. The second clause is clearly and plainly expressed, and there can be no doubt as to its construction. The testator gives the property to his wife during her life ; and at her death it is to be equally divided among Ms cMldren. The division is, in express terms, directed to be equal, and is confined to the children of the testator. I am aware ...... that there are cases, in which grandchildren have been permitted to take under a bequest to “ children;” but this has never been done except where there were no children, or theie were very strong'and conclusive circumstances to shew, that such was the intention of the testator. When the language of the testator is *10 ambiguous, it is proper to look through the whole will to give explanation to his meaning : but it does not follow, that because he expresses an intention in one clause in favour of one set of persons, he means that intention to be applied to all the clauses of his will in which those persons are mentioned. It is very true, that the testator intended the residue of his property to be so divided among his children, and the children of David in right of their father, as to put them all on a footing of equality, in reference to advancements he had made to some of them in his life time, and for which he had taken their receipts. And I may here remark by the way, that if it were necessary to the decision of this case, I should, under the circumstances, and after the lapse of so many years, be inclined to presume that this equality had been effected by the division of 1803; a presumption which seems to me to be aided by the receipts in full given to the executors by some of the legatees, although of themselves they are not conclusive. But it does not follow from the declared intention as to the residue, either that the children of David ought to share in a bequest in which they are not named, or that if the residuary estate were insufficient to produce the equality intended, the testator further intended, that the deficiency should be made up from another, and that a specific bequest.
■I cannot perceive 'that such a construction is called for by tbe sixth clause, or that it is in any manner necessary, in order to give that clause the full effect intended by the testator. That clause is in these words : “ The remainder of my estate, when all my heirs are made equal, as will appear by receipts, to be equally divided among them ; and the whole of the heirs of my son David Ruff, deceased, to have an equal share with one of my children, to be equally divided among them the said heiis.” Now what remainder could the testator mean 1 Surely that which remained after the specific bequests: and not that which was to fall in on the death of his wife, an event which might not, and in fact did not, happen for many years; and which remainder, whenever it did fall in, was most'clearly and explicitly given to other persons than those named in the residuary clause, that is, to his children, and net to any of his grandchildren. The bequest in tbe sixth clause is then confined to the residuary estate, and the directions contained in that clause must *11 be understood as confined within the same limit, unless there is something in them which requires a more extensive application.
I was at first inclined to suppose, that the words giving, an interest to the children of David in right of their father, might be regarded as a distinct clause, applicable to every other clause in which the testator had made a provision for his'children: but upon further examination they appear to me to be so inseparably connected with the sixth clause, that they cannot be applied to any other without the hazard of violating the intention of the testator. It is to be remarked, too, that he appears to have recognised a distinction between the effect of the words children and heirs. In the second clause he directs the property to be divided among his “ children,” but in the sixth clause, where he intends the children of his deceased son to come in for a share, he uses the word “heirs” : and the sentence which follows, declaring in express terms thjt he intended the children of his son David to be-accounted one of his “ heirs,” seems to me to have been added out'of caution, to shew the sense in which he understood that term, in contradistinction to the term “ children,” which he had employed in the second clause. Under these circumstances, it would be venturing upon dangerous ground, to wi est the words in relation to the heirs of David from their connexion in the sixth clause, in order to render them applicable to the second.
The children of David being excluded from participation in the bequest of the remainder mentioned in the second clause, the testator could hardly have intended, that the value of that remainder should be computed in making the heirs equal, as directed by the sixth clause; for that would be, in effect, to give them, indirectly, the full benefit of the fund, from which they were directly excluded. The argument, that this was his intention, proceeds upon the ground, that he has directed all his heirs to he made• equal. But they are only directed to be made equal in reference to certain advancements, for which he had taken receipts. And besides, they are to be made equal by the division of the residuary estate; whilst the testator most obviously comtemplated a more distant period for the division of the remainder, which was to fall in upon the death of the wife. If the heirs were made equal in the division of the residue, the directions of the sixth clause are fully satisfied, and their object accomplished : and although that equality is subsequently disturbed *12 ^ division of the property bequeathed to the wife fox life, the directions of the sixth clause are not thereby violated ; and there is nothing in them therefore to control the operatioxi of the unequivocal provision of the second clause.
There is, if possible, even less ground for holding the remainder, specifically bequeathed by the second clause, liable to make up a deficiency in the residuary estate to put the legatees upon an equal footing. Such a result can only be attained by giving to the sixth clause the effect of revoking the bequest of the remainder, and substituting a provision that it should sink into the residuum ; and there is not a syllable in any part of the will to warrant such a course. If the testator had looked so far forward as to the death of his wife for an additional fund to equalize his heirs, he would undoubtedly have said so. But he has not said so ; and in the absence of such a direction, it would be establishing a novel doctrine, if the court were to order specific legatees to abate in favour of the legatees of the residue. The testator no doubt supposed his residuary estate amply sufficient to make all the legatees equal; and I think it quite probable that it was so : but if it were insufficient, although the will may be disappointed, we have no authority for saying that the testator would have made his will differently, even if he had anticipated such a result.
That the will of a testator should be carried into effect, it is not a prerequisite that his motives should be known, and approved, by the Coui't. líe has a right to lock them up in his own breast, although if disclosed, they might shew that a provision in his will, which of itself appeared idle and capi'icious, was in fact in the highest decree just and reasonable. In the pi-esent instance, the testator did not appear to estimate, very highly, the value of the remainder, which was to fall in' on the death of his wife. The expression, “ if any thing remains,” shews, that he looked forward to the probability of its being lost or dissipated by some casuality during the continuance of the life estate. Now it is quite possible, that he might wish to secure to his children, most of whom had been advanced in his life time, a benefit out of this contingent fund, which should not be liable to any abatement; since in the event of the residuai’y estate proving insufficient- to put them all upon an equal footing, those who had been most largely advanced would *13 have nothing else to receive from his estate after his death. Similar reasons might have prevailed to exclude the children of the deceased son; as they might otherwise have been sufficiently provided for. But it is unnecessary to speculate upon the motives of the testator. It is sufficient that this is the necessary and legal construction.
Upon the whole, I am of opinion, that the second and sixth clauses ofthe will have.no connexion with each other, but that they must be taken separately : and that, the remainder which has fallen in by the death of the widow, must, in pursuance of the provisions ofthe second clause, be divided among the children of the testator, in exclusion of the children of his deceased son David Buff, and without regard to the receipts mentioned in the sixth clause ; whether the residuary estate was, or was not, sufficient to put the legatees upon an equal footing, at the time when the division of that estate was made. The division is therefore ordered accordingly ; and the decree of the Chancellor is reversed.

Decree reversed.